IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-329-D

| | | |
|---|---|---|
| FRANCES KAY BEACH, as administrator of the Estate of ERIC GRIFFITH,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM GRADY, et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) | **ORDER** |

On June 16, 2023, Frances Kay Beach ("Beach" or "plaintiff"), as administrator of the Eric Griffith ("Griffith") estate, filed a complaint against William Grady ("Grady") in his individual capacity, Curtis Thompson ("Thompson") in his individual capacity, Michael Pittman ("Pittman") in his individual capacity, Wayne Coats in his individual capacity and in his official capacity as Sheriff of Harnett County ("Sheriff Coats"), Harnett County, and Travelers Casualty and Surety Company of America ("Travelers") (collectively "defendants") [D.E. 1]. Beach alleges (1) deliberate indifference to serious medical needs against Sheriff Coats, Grady, Thompson, and Pittman under 42 U.S.C. § 1983 ("section 1983") ("count one"), (2) a policy or custom of deliberate indifference to serious medical needs against Harnett County and Sheriff Coats in his official capacity under section 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) ("count two"), (3) a policy or custom of deliberate indifference to the inadequate training of detention officers on the risks of delaying or denying treatment to inmates with serious medical needs against Sheriff Coats in his official capacity under section 1983 and Monell ("count three"),

and (4) an action on official bond against Sheriff Coats and Travelers ("count four"). See Compl. [D.E. 1] ¶¶ 146–197.

On November 26, 2024, defendants moved for summary judgment [D.E. 63] and filed exhibits [D.E. 64–65], a statement of material facts ("DSMF") [D.E. 67], and a memorandum in support [D.E. 68].[1] See Fed. R. Civ. P. 56. On December 17, 2024, Beach responded in opposition [D.E. 71], filed a statement of material facts ("PSMF") [D.E. 72], an additional statement of material facts ("PSAMF") [D.E. 73], and exhibits [D.E. 74]. The same day, Beach filed a motion under Federal Rule of Civil Procedure 56(d) [D.E. 75] and a memorandum in support [D.E. 76]. See Fed. R. Civ. P. 56(d). Defendants did not respond to plaintiff's Rule 56(d) motion, did not reply in support of their motion for summary judgment, and did not respond to plaintiff's additional statement of material facts. As explained below, the court grants in part defendants' motion for summary judgment, dismisses Harnett County as a defendant, and denies without prejudice plaintiff's Rule 56(d) motion.

I.

On June 19, 2021, a deputy with the Harnett County Sheriff's Office ("HCSO") arrested Griffith for failure to comply with a lawful order and transported Griffith to the Harnett County Detention Center ("HCDC"). See DSMF ¶ 18; PSMF ¶ 18; PSAMF ¶ 1; [D.E. 64-3] 2; [D.E. 64-1] 435. Corporal McKoy, who is not a defendant, conducted an intake evaluation, including a medical questionnaire. See DSMF ¶ 20; PSMF ¶ 20. McKoy reported that "Griffith was patted down to ensure there was no contraband on him . . . . [and] that he was detoxing from Xanax and fentanyl but was not otherwise reported to be in need of emergency medical services." DSMF ¶¶ 20, 22 (cleaned up); see PSMF ¶¶ 20, 22. "McKoy observed Griffith placing his head in his lap

[1] The court grants defendants' motion to manually file audio and video exhibits [D.E. 66].

and appearing to be tired or sleepy." DSMF ¶ 25; cf. PSMF ¶ 25; PSAMF ¶ 3. Griffith's "sleepiness was a [known] indicator of drug use and impairment for drugs such as Xanax and fentanyl." PSAMF ¶ 3; see also id. ¶ 2 ("Notes written by HCSO officers also stated that, on arrival to the jail, . . . Griffith appeared to have been under the influence of unknown substance."); cf. DSMF ¶ 27. "[T]he jailers did not report [Griffith]'s condition to the medical staff, offer him any medical treatment or medications, and completely failed to follow the requirements and policies set out in the [HCDC] Health Plan." PSAMF ¶ 5; cf. DSMF ¶¶ 26, 29–30.

McKoy and his supervisor kept Griffith in a holding cell for approximately six hours before releasing him to general population, "where he was observed in 15-minute intervals." DSMF ¶¶ 33–34; cf. PSMF ¶¶ 33–34.[2] Griffith "was placed in general population without incident." DSMF ¶ 37; see PSMF ¶ 37.

On Monday, June 21, 2021, "Pittman began his shift at approximately 5:28 a.m., and . . . was the Sergeant on duty and Shift Supervisor on June 21 and 22, 2021." DSMF ¶ 41; see PSMF ¶ 41. Griffith's "aunt, Melanie McGee, called the jail and spoke with [] Pittman and told him she was worried about [Griffith]'s medical condition and drug withdrawals." PSAMF ¶ 9; cf. DSMF ¶ 45. Pittman "informed her that Griffith would have to put in a 'sick call' per HCDC policy to be

---

[2] To the extent that plaintiff "disputes" paragraphs in defendants' statement of material facts by citing to general sections of her additional statement of material facts that do not specifically contradict defendants' statement, her response does not suffice under Federal Rule of Civil Procedure 56 or Local Civil Rule 56.1. See Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C.), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. Mar. 15, 2017) (unpublished). For example, plaintiff "disputes" that Griffith was kept in a holding cell at intake for six hours upon his admission before being placed in general population. Compare DSMF ¶ 34, with PSMF ¶ 34. Plaintiff, however, does not produce any evidence to the contrary. Cf. PSAMF ¶¶ 8–12. This dispute does not create a genuine issue of material fact.

checked on by a nurse . . . . [and] would be checked on every thirty minutes by HCDC." DSMF ¶ 45 (cleaned up); cf. PSMF ¶ 45. "HCSO and [] Pittman took no action in response to this call." PSAMF ¶ 9; cf. DSMF ¶¶ 43–44, 47–48 (Pittman "does not recall receiving a specific briefing or information on Griffith," any "conversation with McGee specifically, or "having any interactions with Griffith"); PSMF ¶¶ 43–44, 47–48.

"Griffith's friend, Pastor James Howard also called the jail told the officers he was worried about [Griffith]'s medical condition and drug withdrawals." PSAMF ¶ 10. "Pastor Howard went to the jail to get information needed to sign [Griffith] up for a drug treatment program." Id. "He spoke with Sheriff Coats personally about [Griffith]'s drug withdrawals but was not allowed to speak with [Griffith] or get the information he needed." Id. "Sheriff Coats admitted that the conversation with Pastor Howard occurred and that he passed on the information from Pastor Howard to either [] Grady or a major who is not a defendant." Id.

"Griffith's cellmate . . . testified that [Griffith] was consistently demonstrating signs of drug withdrawals, . . . . [and] asked the jailers for medical help with his withdrawals, but the jailers refused to provide any help and responded to his request by saying 'I hope you shit on yourself.'" PSAMF ¶ 11; cf. DSMF ¶ 44. Plaintiff has produced evidence that HCDC officers failed to properly monitor Griffith. See PSAMF ¶¶ 13, 15, 59. The parties dispute Pittman's role in conducting or overseeing supervision rounds. Compare DSMF ¶ 42, with PSMF ¶ 42, and PSAMF ¶ 14.

On June 22, 2021, at approximately 8:00 a.m., Griffith used the intercom in his cell to request a shower, which an HCDC officer denied. See DSMF ¶ 55; PSMF ¶ 55. Between approximately 8:39 and 8:41 a.m., Griffith's cellmate woke up and saw Griffith unresponsive and "laying on the floor with foam coming out of his mouth." PSAMF ¶ 16 (cleaned up). The cellmate

used an intercom to summon assistance. Compare DSMF ¶¶ 56–58, with PSAMF ¶¶ 16–17. The parties dispute whether (1) the cellmate used an intercom that would have required notifying Pittman, Thompson, and Grady, (2) the cellmate informed HCDC officers that Griffith was dying or vomiting, and (3) officers delayed in responding. Compare DSMF ¶¶ 56–62, with PSMF ¶¶ 56–62, and PSAMF ¶¶ 16–28.

On the morning of June 22, 2021, Griffith died after suffering a cardiac arrest and seizure. See PSAMF ¶ 31. Although "[t]here were normally three separate [automated external defibrillators ("AEDs")] available to HCDC staff at all times" in June 2021, Pittman had to search for an AED to bring to Griffith's cell on June 22, 2021. DSMF ¶ 63; compare id. ¶¶ 62–66, with PSMF ¶¶ 62–66, and PSAMF ¶¶ 19, 29–30, and [D.E. 65-7] at 0:35–3:07 (audio recordings discussing need for defibrillator). An autopsy determined that methamphetamine toxicity caused Griffith's death. Compare PSAMF ¶ 31, with DSMF ¶ 76, and PSMF ¶ 76.

When Griffith died on June 22, 2021, HCDC had written "detailed policies relevant to intake, screening, search and confiscation of contraband, housing, surveillance, medical care, and emergency medical services." DSMF ¶ 8; see PSMF ¶ 8. These policies included a medical plan in which Harnett County had some involvement or oversight. See DSMF ¶ 11; cf. PSMF ¶ 11. Plaintiff contends that on the day of Griffith's admission to the HCDC, McKoy and his supervisor "violated [the medical plan] and HCSO policy in multiple ways, including by not allowing [Griffith] to be evaluated by the jail medical staff for his drug withdrawals." PSAMF ¶¶ 5–6.

HCDC "did not have policies on how to stop officers from smuggling drugs into the jail or how to stop inmates from accessing drugs, and . . . knew that . . . Griffith could potentially possess drugs while in the jail." PSAMF ¶ 4. Plaintiff has produced evidence that (1) HCDC officers facilitated "an active and rampant network of the sale, purchase and use of illegal drugs inside"

HCDC, (2) HCDC officers' actions show a pattern of deliberate indifference to inmates' serious medical needs, including drug withdrawals, (3) HCDC inmates frequently overdose on drugs, and (4) HCDC staff were not adequately trained. PSAMF ¶¶ 4, 33–41, 44–50, 52–53, 60–62, 65; see also PSMF ¶¶ 39–40. On the day before Griffith died, "an inmate was sent to booking to wait for EMS due to withdrawals." DSMF ¶ 40; cf. PSMF ¶ 40.

In June 2021, Thompson was a HCDC lieutenant and reported to Grady. See DSMF ¶ 5; PSMF ¶ 5. Thompson "did not engage in the rudimentary day-to-day activities at the HCDC, but instead took the role of overseeing the HCDC on-site." DSMF ¶ 5; see PSMF ¶ 5. Thompson reported to Captain Grady. DSMF ¶ 5; see PSMF ¶ 5. After Griffith died, Grady filed "a Report of Inmate Death" and Thompson submitted "[a] Division of Health Service Regulation Statement of Deficiencies and Plan of Correction" to the North Carolina Department of Health and Human Services. DSMF ¶ 75; PSMF ¶ 75; see [D.E. 64-1] 465–68.

## II.

A court may grant summary judgment when, after reviewing the record as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleadings, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S.

at 248–49. In doing so, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

Defendants have submitted audio and video recordings capturing a portion of the events of June 22, 2021. See [D.E. 65-7, 65-8]. Such evidence can affect the summary judgment standard. See Scott, 550 U.S. at 378; Alexander v. Connor, 105 F.4th 174, 179 (4th Cir. 2024); Lewis v. Caraballo, 98 F.4th 521, 529 (4th Cir. 2024); Jones v. Solomon, 90 F.4th 198, 204 (4th Cir. 2024); Harris v. Pittman, 927 F.3d 266, 276 (4th Cir. 2019); Brooks v. Johnson, 924 F.3d 104, 115 (4th Cir. 2019). Where such recordings contradict the nonmoving party's version of the facts such that no reasonable jury could believe the nonmoving party, the court must view the facts in the light depicted by the recordings. See Scott, 550 U.S. at 379–81; see, e.g., Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009). But this exception is "narrow." Lewis, 98 F.4th at 529; see Alexander, 105 F.4th at 179. Here, the video recordings have no sound or timestamps, fail to adequately capture defendants' conduct or to demonstrate which intercom Robles used to summon assistance,[3] and arguably support plaintiff's contention that HCDC officers conducted infrequent observation rounds. Compare [D.E. 65-8], with DSMF ¶¶ 47, 54, and PSAMF ¶¶ 13–15. Thus, the court does not rely on the recordings in resolving the motion. See, e.g., Stockton v. Wake Cnty., 173 F. Supp. 3d 292, 318 (E.D.N.C. 2016).

[3] On the video file named "108 - 108 B105 Dayroom - 2021-06-22 07-56-55-479.mp4", Robles can be seen exiting the cell and walking downstairs to the sallyport door, where he waits for two officers to arrive. See id. at 52:13–54:51. Robles appears to push a button next to the sallyport door. See id. at 52:38. The court cannot discern, however, whether Robles is speaking into any intercom, and the video does not depict the inside of the cell, where Robles says he used a different intercom to summon assistance.

## A.

In count one, Beach alleges that Sheriff Coats, Grady, Thompson, and Pittman were deliberately indifferent to Griffith's serious medical needs, resulting in his death. See Compl. ¶¶ 146–59. The Due Process Clause of the Fourteenth Amendment "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" Short v. Hartman, 87 F. 4th 593, 608–09 (4th Cir. 2023) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)), cert. denied, 144 S. Ct. 2631 (2024); see Jenkins v. Woodard, 109 F.4th 242, 250 n.3 (4th Cir. 2024); Williamson v. Stirling, 912 F.3d 154, 178 (4th Cir. 2018); Dilworth v. Adams, 841 F.3d 246, 252 (4th Cir. 2016). Moreover, the Fourteenth Amendment's Due Process Clause guarantees a pretrial detainee "adequate medical care and freedom from deliberate indifference to his serious medical needs." Tarashuk v. Givens, 53 F.4th 154, 164 (4th Cir. 2022); see Greene v. Crawford Cnty., 22 F.4th 593, 605 (6th Cir. 2022); Mays v. Sprinkle, 992 F.3d 295, 301 (4th Cir. 2021); Sandoval v. Cnty. of San Diego, 985 F.3d 657, 667 (9th Cir. 2021).

In order to survive summary judgment on this claim, plaintiff must produce evidence from which a reasonable jury could find that Griffith:

> (1) . . . had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, [Griffith] was harmed.

Short, 87 F.4th at 611.

Plaintiff has produced evidence that would allow a reasonable jury to find in her favor on count one. At intake, Griffith reported that he was detoxing and exhibited obvious signs of withdrawal, but an HCDC officers placed him in an observation cell without requesting a medical

examination. Griffith exhibited obvious signs of withdrawal while confined in his cell, but when he requested medical treatment, a HCDC officer rejected his request and indicated that the officer recognized he was in withdrawal. Friends and family members reported their concerns about Griffith's need for medical treatment, including to Sheriff Coats, but HCDC took no action in response. Griffith had access to narcotics in the HCDC, and HCDC officers routinely ignored inmates' requests for medical attention for opioid withdrawal.

Defendants dispute this evidence. Genuine issues of material fact exist. Thus, the court denies defendants' motion for summary judgment on count one. See, e.g., Lara-Grimaldi v. Cnty. of Putnam, 132 F.4th 614, 640–42 (2d Cir. 2025); Ford v. Anderson Cnty., 102 F.4th 292, 315–17 (5th Cir. 2024); Helphenstine v. Lewis Cnty., 60 F.4th 305, 318–20 (6th Cir. 2023), cert. denied, 144 S. Ct. 692 (2024); Greene, 22 F.4th at 609–13; Sandoval, 985 F.3d at 682–83; Stockton, 173 F. Supp. 3d at 317–18; cf. Mays, 992 F.3d at 305; Strain v. Regalado, 977 F.3d 984, 994–95 (10th Cir. 2020).

B.

In count two, Beach alleges that Harnett County and Sheriff Coats in his official capacity maintained a policy or custom of deliberate indifference to serious medical needs in violation of 42 U.S.C. § 1983. See Compl. ¶¶ 160–178. When suing a county, a plaintiff must plausibly allege that a policy or custom attributable to that county caused the violation of the plaintiff's federally protected rights. See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403–05 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978); King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402–03 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle,

326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999); Hill v. Robeson Cnty., 733 F. Supp. 2d 676, 688–89 (E.D.N.C. 2010). "Monell's policy or custom requirement applies" in section 1983 cases regardless "of whether the relief sought is monetary or prospective." Los Angeles Cnty., v. Humphries, 562 U.S. 29, 39 (2010). There are four ways in which liability for a policy or custom may arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–23 (1988). Even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff can "identify conduct attributable to the municipality." Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Brown, 520 U.S. at 404 (cleaned up); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Thus, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999), abrogated on other grounds by Short, 87 F.4th at 609. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404.

Whether a county has final policymaking authority in a specific area "is a question of state law." Praprotnik, 485 U.S. at 124. "Under North Carolina law, sheriffs have substantial independence from county government," and county governments do not hire sheriffs. Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008); see Lewis v. Peterkin, No. 1:19-CV-418, 2023 WL 6319553, at *14 (M.D.N.C. Aug. 31, 2023) (unpublished), report and recommendation adopted, 2023 WL 6314202 (M.D.N.C. Sept. 28, 2023) (unpublished); Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000). North Carolina law vests the sheriff with the "statutory responsibility for the care and custody of the inmates at the county jail." Vaught v. Ingram, No. 5:10-CT-3009, 2011 WL 761482, at *4 (E.D.N.C. Feb. 24, 2011) (unpublished); see N.C. Gen. Stat. § 162-22; King v. Blackwood, No. 1:21-CV-383, 2023 WL 4163141, at *10 (M.D.N.C. June 23, 2023) (unpublished), report and recommendation adopted, 2023 WL 4902517 (M.D.N.C. Aug. 1, 2023) (unpublished); Landry v. North Carolina, No. 3:10-CV-585, 2011 WL 3682788, at *2 (W.D.N.C. Aug. 23, 2011) (unpublished). "However, the county is responsible for developing a plan for providing medical care for prisoners in the county jail, together with the sheriff and other local authorities." King, 2023 WL 4163141, at *10 (cleaned up); see N.C. Gen.

Stat. § 153A-225; Lewis, 2023 WL 6319553, at *14; Stockton, 173 F. Supp. 3d at 303; Vaught, 2011 WL 761482, at *3–4.

Beach focuses on alleged violations of HCDC's health plan rather than on the sufficiency of the health plan itself. See PSAMF ¶¶ 5–12. Moreover, Beach has not presented evidence from which a reasonable jury could find that Harnett County "had actual or constructive knowledge of the conduct" of HCDC officers. Owens, 767 F.3d at 402; see Lewis, 2023 WL 6319553, at *14; cf. Sandoval, 985 F.3d at 682–83; King, 2023 WL 4163141, at *11 n.6; cf. Smith v. Atkins, 777 F. Supp. 2d 955, 969 & n.3 (E.D.N.C. 2011). Thus, the court grants defendants' motion for summary judgment as to Harnett County.

As for Sheriff Coats, defendants focus on whether plaintiff has shown a violation of Griffith's constitutional rights. Alternatively, they argue that plaintiff "cannot show that any alleged constitutional violations were caused by or the result of an official policy, practice, or custom." [D.E. 68] 15–17.

Genuine issues of material fact preclude summary judgment for Sheriff Coats on count two. Beach has presented evidence from which a reasonable juror could find "practices of deliberate indifference to safety and serious medical needs that are sufficiently persistent and widespread to constitute a custom under § 1983." King, 2023 WL 4163141, at *11; see Stockton, 173 F. Supp. 3d at 304.

C.

In count three, Beach alleges a section 1983 claim against Sheriff Coats in his official capacity for a policy or custom of deliberate indifference to the inadequate training of detention officers on the risks of delaying or denying treatment to inmates with serious medical needs. See Compl. ¶¶ 179–91. To establish such a claim, a plaintiff must prove that (1) Sheriff Coats actually

violated plaintiff's constitutional or statutory rights, (2) Sheriff Coats's failure to properly train or supervise the subordinates amounts to "deliberate indifference" to the rights of plaintiff, and (3) this failure to train or supervise actually caused the subordinates to violate the plaintiff's rights. See Connick v. Thompson, 563 U.S. 51, 59–63 (2011); Canton, 489 U.S. at 388–92; Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Spell v. McDaniel, 824 F.2d 1380, 1389–90 (4th Cir. 1987); Brown v. Frazier, No. 4:12-CV-290, 2013 WL 5739091, at *2–3 (E.D.N.C. Oct. 22, 2013) (unpublished); Cooper v. Brunswick Cnty. Sheriff's Dep't, 896 F. Supp. 2d 432, 451–53 (E.D.N.C. 2012), aff'd sub nom. Cooper v. Sheehan, 735 F.3d 153 (4th Cir. 2013); Smith, 777 F. Supp. 2d at 966–67.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quotation omitted); see Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) (collecting cases). The Supreme Court has acknowledged, however, "the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." Brown, 520 U.S. at 409.

Genuine issues of material fact preclude summary judgment on count three. Plaintiff has presented evidence of widespread "failure to properly train officers that manifests deliberate indifference to the rights of pretrial detainees and a practice to deny detainees access to necessary medical . . . services by using unlicensed, untrained staff to conduct limited, infrequent, cursory assessments of inmates," and "an affirmative causal link between this custom and [Griffith]'s death." Renzi v. Naphcare, Inc., No. 1:24-CV-211, 2025 WL 448007, at *9–10 (M.D.N.C. Feb.

10, 2025) (unpublished) (cleaned up); see, e.g., Helphenstine, 60 F.4th at 323–24; Sandoval, 985 F.3d at 682–83; King, 2023 WL 4163141, at *11; Stockton, 173 F. Supp. 3d at 305.

Defendants are not entitled to summary judgment on counts one and three. Thus, Travelers is not entitled to summary judgment on count four. See Knibbs v. Momphard, 30 F.4th 200, 230–31 (4th Cir. 2022); Hensley ex rel. N. Carolina v. Price, 876 F.3d 573, 577 n.1 (4th Cir. 2017).

III.

The individual defendants contend that they are entitled to qualified immunity and argue that any constitutional violation was not "clearly established" in June 2021. See [D.E. 68] 14–15. Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Rivas-Villegas v. Cortesluna, 595 U.S. 1, 4–5 (2021) (per curiam); City of Tahlequah v. Bond, 595 U.S. 9, 12–14 (2021) (per curiam); City of Escondido v. Emmons, 586 U.S. 38, 42–44 (2019) (per curiam); Kisela v. Hughes, 584 U.S. 100, 103–08 (2018) (per curiam); District of Columbia v. Wesby, 583 U.S. 48, 62–68 (2018); Hernandez v. Mesa, 582 U.S. 548, 554 (2017) (per curiam); Ziglar v. Abbasi, 582 U.S. 120, 150–52 (2017); White v. Pauly, 580 U.S. 73, 78–81 (2017) (per curiam); Mullenix v. Luna, 577 U.S. 7, 11–13 (2015) (per curiam); Taylor v. Barkes, 575 U.S. 822, 825–27 (2015) (per curiam); City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 611 (2015); Carroll v. Carman, 574 U.S. 13, 16–17 (2014) (per curiam); Reichle v. Howards, 566 U.S. 658, 664 (2012); Camreta v. Greene, 563 U.S. 692, 705 (2011); Pearson v. Callahan, 555 U.S. 223, 236 (2009); King v. Riley, 76 F.4th 259, 264–68 (4th Cir. 2023); Sharpe v. Winterville Police Dep't, 59 F.4th 674, 682–84 (4th Cir. 2023); Burnes-Fisher v. Romero-Lehrer, 57 F.4th 421, 424 (4th Cir. 2023); Tobey v. Jones, 706 F.3d 379, 385 (4th Cir.

2013). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 584 U.S. at 104; Wesby, 583 U.S. at 63; Ziglar, 582 U.S. at 151–52; White, 580 U.S. at 79–80; Mullenix, 577 U.S. at 12; Taylor, 575 U.S. at 825; Sheehan, 575 U.S. at 611; Carroll, 574 U.S. at 17.

In analyzing qualified immunity, the court asks (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson, 555 U.S. at 232 (cleaned up); see Wood v. Moss, 572 U.S. 744, 757 (2014); Reichle, 566 U.S. at 664; Lewis, 98 F.4th at 530; King, 76 F.4th at 264–65; Knibbs, 30 F.4th at 214; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). Courts may decide which question to address first. See Pearson, 555 U.S. at 236; Lewis, 98 F.4th at 530. Qualified immunity shields a defendant if the answer to either question is "no." See Reichle, 566 U.S. at 664; Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011); Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009).

Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Reichle, 566 U.S. at 664; King, 76 F.4th at 266–68; Sharpe, 59 F.4th at 682–84. When considering such precedent, "courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals and the highest court of the state in which the case arose." Wilson v. Kittoe, 337 F.3d 392, 402–03 (4th Cir. 2003) (cleaned up), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009); see Sharpe, 59 F.4th at 683; Dean ex rel. Harkness v. McKinney, 976 F.3d 407, 417 (4th Cir. 2020). "A [g]overnment official's conduct violates clearly established

law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 563 U.S. at 741 (cleaned up); see Rivas-Villegas, 595 U.S. at 4–5; King, 76 F.4th at 265; Sharpe, 59 F.4th at 682–84. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Bond, 595 U.S. at 12 (quotations omitted); see Wesby, 583 U.S. at 63. An officer is entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." Kisela, 584 U.S. at 104 (quoting Mullenix, 577 U.S. at 13); see Wesby, 583 U.S. at 63–66. Nonetheless, courts should not "assume that government officials are incapable of drawing logical inferences, reasoning by analogy, or exercising common sense." Harris v. Town of S. Pines, 110 F.4th 633, 644 (4th Cir. 2024) (quotation omitted).

A pretrial detainee has a clearly established "right to adequate medical care and freedom from deliberate indifference to [his] serious medical needs." Tarashuk, 53 F.4th at 163; see Mays, 992 F.3d at 301–02. And "a reasonable official in [defendant]s' position would have known that" failing to provide a medical assessment for a pretrial detainee who both reported and demonstrated visible signs of withdrawal from narcotics upon his admission to the jail "could give rise to a Fourteenth Amendment violation." Tarashuk, 53 F.4th at 165; cf. Mays, 992 F.3d at 301–05. Moreover, genuine issues of material fact exist concerning defendants' "subjective knowledge of [Griffith's] condition and the excessive risk posed from inaction." Mays, 992 F.3d at 301; see Ford, 102 F.4th at 315; Greene, 22 F.4th at 615. Defendants are not entitled to qualified immunity at this point. See Ford, 102 F.4th at 315–17; Helphenstine, 60 F.4th at 326–27; Cox v. City of Bos., 734 F. Supp. 3d 173, 181 n.8 (D. Mass. 2024); cf. Sandoval, 985 F.3d at 679. Thus, the court denies defendants' motion for summary judgment.

## IV.

In sum, the court GRANTS defendants' motion to manually file audio and video exhibits [D.E. 66], DENIES WITHOUT PREJUDICE plaintiff's Rule 56(d) motion [D.E. 75], GRANTS IN PART defendants' motion for summary judgment [D.E. 63], DISMISSES plaintiff's claim against Harnett County, and DISMISSES Harnett County as a defendant. All other claims and defendants remain. The court REFERS this action to Magistrate Judge Robert T. Numbers, II, for a court-hosted settlement conference.

SO ORDERED. This 4 day of August, 2025.

J. Dever

JAMES C. DEVER III
United States District Judge